**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 17-cv-02309-MSK-STV

BOYD BOYKIN,

     Plaintiff,

v.

ANADARKO PETROLEUM CORPORATION,

     Defendant.

---

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CONDITIONAL CERTIFICATION

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's ("Mr. Boykin")
Motion For Conditional Certification **(# 24)**, the Defendant's ("Anadarko") response **(# 25)**, and
Mr. Boykin's reply **(# 26)**.

## FACTS

The Court summarizes the pertinent facts here and elaborates below.  According to the
Complaint **(# 1)**, Mr. Boykin was employed by Anadarko as a Rig Welder.    He alleges that
Anadarko improperly classified him and other Rig Welders as "independent contractors," and
proceeded to pay them only straight-time wages, even when they worked in excess of 40 hours
per week.  Thus, Mr. Boykin alleges that Anadarko violated the provisions of the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 207.

Mr. Boykin seeks to pursue this matter as an FLSA collective action under 29 U.S.C. §
216(b).  In the instant motion, he seeks an order from the Court "certifying a class of Rig

Welders," and authorizing issuance of notice and consent forms to affected employees, allowing them to opt into this lawsuit.

<u>**ANALYSIS**</u>

**A. Scope of Notice**

Under the FLSA, an action to recover unpaid overtime compensation may be brought by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." However, the statute also provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party." 29 U.S.C. § 216(b). These two provisions authorize what has come to be known as a "collective action," an animal quite distinct from its more familiar cousin, the class action under Fed. R. Civ. P. 23.

Among the prominent differences between the FLSA collective action and a Rule 23 class action is the initial issue of "certification." In class actions, the class certification stage is significant, as it tends to define the shape of the ensuing case. By contrast, the certification step in the FLSA collective action context has a "sole consequence" of minimal significance: it defines only whether notices about the litigation and consent forms are sent out to potentially-affected employees. *Tyson Foods, Inc. v. Bouapheakeo*, 136 S.Ct. 1036, 1043 (2016).

At the notice stage, the Court limits its analysis to determining which individuals might be "similarly-situated" to Mr. Boykin, such that they should receive notice about this action and the opportunity to opt into it. This early in the litigation, the inquiry is not particularly searching: Mr. Boykin need only provide "substantial allegations that the [individuals sought to be noticed] were together the victims of a single decision, policy, or plan" relating to inappropriate overtime

compensation.  *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001).

Anadarko here argues that the true circumstances are far more complex than Mr. Boykin alleges.  Relying on various affidavits, Anadarko explains that it hires welders like Mr. Boykin through various "third-party service companies." On some projects, Anadarko's arrangement with a given service company is a "turnkey bid," by which Anadarko agrees to pay a single, flat price for completion of a given project to the service company, and the service company is responsible for allocating that total contract price among the laborers who perform the work on that project.  On other projects, Anadarko enters into a "time and materials" contract with service companies, by which the service companies agree to provide laborers to work at specified hourly rate.  (Some such contracts specify straight-time and overtime rates; others simply express the straight-time rate.)  Anadarko states that, in such circumstances, the service company bills Anadarko for a particular sum and the service company allocates that payment to laborers at the specified rates.  In either instance, Anadarko insists, it is the service company, not Anadarko, that determines how many hours a laborer has worked and what wages are due to him or her. Anadarko states that all of Mr. Boykin's work was performed through a service company called DT Bar Welding Services, Inc. ("DT"), under a "time and materials" contract.  Anadarko states that "DT did, in fact, pay some of its workers overtime, but apparently not Boykin."

The Court observes that the underlying facts of this case are sharply and hotly disputed, and the Court does not intend to attempt to resolve any of those disputes at this time.  For purposes of the certification issue, it is sufficient to examine the two sides' factual contentions side-by-side, adopt those that the other side has not disputed, and defer to Mr. Boykin's version

of the facts only where there is a genuine conflict.[1]  By that metric, the Court finds, for purposes

of this Order, that Anadarko is the nominal employer of all Rig Welders, as Mr. Boykin asserts.

Mr. Boykin has not disputed that Anadarko's contracts with the service companies (Mr. Boykin

refers to DT as a "payroll process[or]," but that distinction is not material) to pay those welders

according to various formulas.  Mr. Boykin's work with Anadarko occurred only with DT, and

although Mr. Boykin's affidavit speaks of conversations he had with co-workers, he does not

allege that those co-workers were affiliated with any service companies other than DT or on

projects with different pay formulas.  Therefore, the Court assumes that Mr. Boykin's knowledge

of Anadarko's pay policies relate only to employees who worked on projects in which DT was

the service company.  Mr. Boykin states that he had conversations with other co-workers who

confirmed that they, too, were not paid overtime, but Mr. Boykin has not disputed Anadarko's

claims that other DT welders <u>were</u> paid overtime.  Thus, the Court cannot say that <u>all</u> Rig

Welders paid through DT were victims of the same pay practices that Mr. Boykin alleges, nor

can the Court draw any assumptions about employees paid by Anadarko through service

companies other than DT.  At most, certification must be limited to those Rig Welders with DT

that were not paid overtime.

Accordingly, the Court finds that Mr. Boykin has made a substantial showing warranting

notice to "any Rig Welder, employed by Anadarko through DT Bar Welding Services, Inc., who

failed to receive overtime pay for hours exceeding 40 in a week."  The Court cannot say that Mr.

---

[1]      To the extent that Mr. Boykin believes that discovery provides a basis for seeking
broader certification, he may file an appropriate motion at the appropriate time.  Similarly, to the
extent that Anadarko believes that facts warrant dismissal of the claims of one or more opt-in
plaintiffs (including Mr. Boykin), it is also free to file an appropriate motion at the appropriate
time.

Boykin has made a substantial showing that any other Rig Welder employed by Anadarko and paid through any other service company necessarily experienced the same circumstances.

**B.  Contents of Notice**

Mr. Boykin has tendered a proposed notice to be sent to eligible employees.  The Court finds several components of the proposed notice that are unacceptable.  Most significantly, the Court notes that Section 6, entitled "Your Legal Representation If You Join" and stating that "If you choose to join this collective action lawsuit, your attorneys will be [Mr. Boykin's counsel]" improperly abridges the rights of opt-in claimants to select their own counsel or to choose to represent themselves.  *See generally Oldershaw v DaVita Healthcare Partners, Inc.*, 255 F.Supp.3d 1110, 1115-1116 (D.Colo. 2017).  Similarly, the proposed consent form, which requires all opt-in plaintiffs to allow Mr. Boykin and his counsel to "make all decisions regarding the litigation" on their behalf also abridges their right to assert, compromise, or proceed to trial on their own claims if they so choose.  The Court finds other portions of the proposed notice and consent forms to be misleading – *e.g.* paragraph 4 of the proposed notice promises that "If you return a Consent . . . form, you will be a part of this case," when, in fact, some employees who opt-in might later be determined to be ineligible for various reasons.

The Court attaches to this Order a form of notice and consent form that it has approved in other cases, and has appropriately modified to reflect the circumstances of this case.  This is the notice and consent form the Court approves here.[2]

---

[2]  For notice purposes, the Court has identified April 1, 2015 as the earliest possible date for which any opt-in Plaintiff can recover, given the FLSA's three-year limitations period and the likely delay that will accompany mailing of the notice itself.  The actual limitations period applicable to each opt-in plaintiff will be determined later.

**C. Schedule**

The Court adopts, the following schedule for the giving of notice and the receipt of

consents:

> **14 days from the date of this Order**: Anadarko shall produce to
> Mr. Boykin's counsel the names, last-known mailing address, e-
> mail addresses (if known), and dates of employment for employees
> meeting the definition above.
>
> **28 days from the date of this Order**: Mr. Boykin's counsel shall
> send copies of the attached Notice and Consent Form to affected
> employees.  Notice may be given by mail, e-mail, or both at
> counsel's discretion.
>
> **60 days from date of mailing of Notice:** Consent forms must be
> returned to Mr. Boykin's counsel.  Counsel shall file all returned
> consent forms within 14 days of their receipt.

Mr. Boykin requests leave to perform additional steps to contact affected employees,

including the sending of reminder e-mails and making telephone calls.  The Court declines to

authorize such steps prophylactically.  If Mr. Boykin concludes that mail and e-mail notice has

been substantially ineffective at reaching affected employees, he is free to advise the Court and

move for additional appropriate relief at that time.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Mr.

Boykin's Motion For Conditional Certification **(# 24)**, as set forth herein.

Dated this 21st day of March, 2018.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge

Attachments: Notice form and Consent Form